on behalf of the petitioner, Daniel Rusu, I'd like to reserve two minutes for rebuttal. Mr. Rusu is here to challenge the Board of Immigration Appeals' affirmance of the IAJ's decision that he did not qualify for an exception to the one-year bar to seek asylum, and he's also here to challenge the IAJ's decision that he failed to prove that he is eligible for withholding of removal. If it pleases the Court, one of the issues that was brought up during the course of briefing was the jurisdictional question on whether or not this Court has jurisdiction to review if an applicant qualifies for an extraordinary circumstance exception to the one-year bar. Mr. Rusu respectfully submits that this Court's recent precedent establishes that this Court does have jurisdiction whether that issue is cast as a pure question of law or if it's cast as a mixed question of fact and law. So I would like to address the merits of this challenge. The merits of Mr. Rusu's challenge on whether or not he qualified for an extraordinary circumstance exception is that Mr. Rusu credibly testified that he did not apply for asylum within a year of his father's illness. But he wasn't caring for his father. His father was in another country. Is that correct? Yes, Your Honor. It's not as if he were ill. Yes, Your Honor. Yeah. And isn't that quite a difference? It is quite a difference, Your Honor, but the regulations provide that either serious illness to the applicant or an immediate family member qualifies for an exception to the one-year bar. And the I.J. did not address or did not even recognize that the serious illness of a family member may also constitute an exception to the one-year bar. The I.J.'s decision states that — How long does it constitute an exception? Until when? Your Honor, the way I read the regulations is that you establish your exception, and then once there is the exception is triggered, if the administrative agency finds that the exception is triggered, then you look at whether or not the applicant applied for a reason — within a reasonable period after the extraordinary circumstance. In this case, it was four years? Yes, Your Honor. Isn't that an extraordinary long time? Yes, Your Honor. And the difficulty with the agency's decision is that the agency never addressed at all whether or not there is a serious illness to an immediate family member may qualify as an extraordinary circumstance. The agency didn't even recognize it. And the — whether or not this error is harmless or not is not the proper approach, because when there's a violation of a regulation by the agency and that regulation is for the benefit of the applicant, the issue is not whether or not the error is harmless. The agency still has to follow its own regulations. So I — because the agency did not at all address whether the extraordinary circumstance for illness to an immediate family member qualifies for an exception to the one-year deadline, the failure to apply the regulation, Your Honors, our position is that that was an error of law that requires the remand of the agency to address whether or not the illness to the immediate family member was enough to establish the extraordinary circumstance. And then after that, you would look at whether or not Mr. Russo applied within a reasonable period of time. Well, you have two problems. One is that the father was in Romania, and the length of time. If he were caring for the father on a daily basis and so forth, that would be one argument. But I understand what you're saying, that the IJ should have mentioned it. But why don't you go ahead? Yes, Your Honor. I understand that there might be an argument that the error was harmless, but nonetheless, the regulation needs to be applied. And when we're dealing with something such as a serious illness to an immediate family member, one's father, there are a lot of ways to look at that. And I — But, Your Honor, you only used up half your time. Don't you think you ought to get to the other issue? Yes, Your Honor. I'll get to the other issue. Our other — the other issue is, with respect to the rest of the asylum analysis, the immigration judge alternatively held that Mr. Russo did not establish statutory eligibility for asylum based on the facts of his case. And the BIA, however, decided not to reach this alternative argument. Instead, the BIA declined to address whether the IJ's alternative findings with respect to asylum were supported by the record or not. And — but the problem this causes is that when the BIA — the BIA did affirm the IJ's withholding of removal of finding. And the BIA — the BIA could not do that because that is inherently contradictory. On one hand, the BIA is refusing to address whether the basis of the immigration judge's decision for asylum is correct or not. And on the other hand, the BIA is affirming the immigration judge's decision for withholding of removal. And the IJ is — had — had based the withholding of removal finding on the asylum findings. So the BIA at all did not address at all how it could, on one hand, not decide whether or not the immigration judge was correct or not with respect to the asylum, and then, on the other hand, affirm the withholding of removal decision based on the asylum findings. With respect to asylum, would you comment on past persecution in this case? Yes, Your Honor. I — I believe that Mr. Russo does establish past persecution. I think the two most relevant decisions of this Court with respect to past persecution is GUO — we cite that case in our briefs, where there was an instance where there's a very similar circumstance where the applicant made — manifested their religious beliefs, and the authorities arrested the Chinese applicant, detained him, and mistreated him. Mr. Russo similarly did this. He defied a government order to not enter the church by breaking the seal, and he was arrested and physically mistreated during his detention. So we believe that those cases — our case is parallel with GUO. Also, there's a recent decision from this Court that we cite in our 28-J letter, a corruption, where the applicant was arrested and detained during his military service because of his ethnicity. In our — in our case, the IG credited that Mr. Russo was arrested and detained during his military duty due to his Baptist religion. So our position is that those two cases, when compared to ours, establish past persecution. Thank you. All right. We have two minutes left. Thank you. Thank you, Your Honor. And may it please the Court, Katherine Hahn on behalf of the United States. I'd like to start out by just commenting on what I just heard from opposing counsel. He said the agency did not ever address whether or not the Petitioner's illness — the Petitioner's father's illness would qualify. And I think that's incorrect. That's true that the IJ might not have specifically addressed that circumstance, although we can debate that. But I think we need not go there because the BIA's opinion, and that's at AR page 2, specifically addresses the father's illness. So it's just simply not the case, as opposing counsel stated, that the agency did not address the father's illness. At AR 2, and I'm quoting here from the BIA, he did not establish that he qualified for an exception that would have excused his dilatory filing based on his father's health problems or otherwise. So the government submits that the agency very much reached that grounds. There's no reason to remand. And even if the IJ's decision were uncertain on that — on that point, the BIA's decision corrects that. And this Court in Ghali, which is cited in the briefs, held that even an IJ's failure to address an argument or regulation could be corrected and rendered harmless error if the BIA addressed that regulation. So the government believes that the — there's no reason to remand for the extraordinary circumstance. I'd now like to discuss, unless the panel has further questions, the past persecution claim. Petitioner's counsel said that this case is just like Guo, and the government argues that is not the case. Petitioner's counsel says it's a very similar circumstance where all the persecution there matches the persecution here. That's not the case. If you look at the facts of Guo, all of the persecution in that case followed on the heels of that Petitioner practicing his religion. For example, the Petitioner was punched — Kennedy, you skipped the intermediate question. Oh, I'm sorry. Was there a determination on the withholding issue when the — when the board seemed not to deal with the alternative disposition, and then based its — I guess the withholding is based on the fact that he didn't make out an asylum claim, but the board skipped the merits of the asylum claim. It's true that the board did not feel the need to reach the alternative holding of the I.J., but the board very much endorsed the I.J.'s denial of Petitioner's withholding claim, and that's very plain, just like the board disavowed the Petitioner's cat claim. I mean, there's really no difference here between the cat claim in terms of what the board did, the cat claim, and the withholding claim. In both instances, we have a kind of summary sentence saying that it agrees with the I.J.'s analysis, and therefore, the withholding claim is denied, and therefore, the cat claim is denied. Did the I.J. consider the extraordinary circumstances in this case? Extraordinary circumstances being — are you speaking about the father's — the father's health? I'm sorry. No, the entire — all the things surrounding the Petitioner. The mistreatment of the Petitioner. Yes. I believe so, Your Honor. I mean, there's a — Where in the record is that? Can you — can you cite me to the record where the I.J. considered the extraordinary circumstances? Absolutely, Your Honor. I mean, if you look at, for example, page AR-124, I believe it is. I'm sorry. It begins on AR-122, and I think goes on for several pages, the I.J.'s analysis of the facts in this case. And, in fact, it reads very similar to the Petitioner's opening brief in terms of taking into account all of the facts, but also taking into account the Petitioner's tendency to break the law, illegally crossing the border twice, which had nothing to do with his religion, at least not on its face, and there's no nexus there the government would submit. And that's why the I.J. properly found — Well, why do you say there's no nexus? He said that was the reason he wanted to get out of Romania, because he was being persecuted for being a Baptist. Well, in addition to that, Your Honor, he also bribed a state official. He broke a seal on a church. I mean, he committed a number of — Well, that's certainly connected to religion, breaking the seal on the church, and it's the law directed at religion. Well, the government's position there would be that it's the Petitioner's burden to show some kind of nexus between him — Well, breaking a seal on a church isn't a nexus to religion? I'm speaking more about the question that you just asked, which is illegally crossing the border, not just once, but twice, and bribing a military official. There's no — there's nothing in the record to suggest that that had anything to do with a protected ground here. And I think the I.J. was correct to find so. Certainly no other result is compelled on this record. And I think that the BIA did reach the merits there, and it's fair to assume that the BIA took the facts that the I.J. found. And, again, Judge Nelson, you asked where in the record. And I'm suggesting that if the courts start at page AR-122 and go on for several pages, the I.J. very much — AR-122 up to AR-124 sort of recites the facts. And then he goes on to say, I find the Respondent generally testified consistently about his experiences in Romania, and the Court finds Respondent credible and will accord his testimony evidentially weight as it related to his past experience in the asylum analysis. And I was interested in his past experience and the question of past persecution, which would raise a presumption of future persecution. Correct. And you're saying that this, by reciting these facts, that is dealing with that. I'm saying not just by reciting the facts, but by the fact that on page AR-124, the Immigration Judge talks about why there's not a sufficient nexus here. And those are some of the reasons I've just mentioned. The fact that military desertion is not on account of a protected ground. If you go to the top of page 125, she talks about, and I quote — this is the Immigration Judge here — the record reflects that the Respondent was arrested because of unlawful activity, including breaking the seal, illegally crossing the border, and or traffic violations. These incidents are personal problems or lawful investigations which do not constitute persecution or form a ground for asylum without more. And I would also — I see that my time is almost up, but I would — I would also just point out here that the IJ then went on to make an alternative — another alternative finding, which is that even if past persecution were established, the government had rebutted that by the country reports and the fact that country conditions in Romania have changed dramatically since 1989. In particular, the agency found that there are over 300,000 Baptists, that the Baptist church is officially recognized by the government of Romania, and other ways that conditions had improved. So I think that even assuming past persecution here, which the IJ then did go ahead and assume that, but the Petitioner had no well-founded fear. And the government submits that even if this court were to find that the withholding finding was therefore erroneous, there's still the well-founded fear point to deal with. And I think that the government would win on that point as well. So unless the panel has further questions for all of these reasons I've stated, I don't believe any other result is compelled by this record, and the government urges this Court to deny. On the changed country conditions, what is — what is the standard that would have to be met in order to establish there weren't — in order for us to hold that there hadn't adequately been shown to be changed country conditions? Sure. Judge Schroeder, of course, the State Department report is not the end-all and be-all, and this Court has recognized that. However, once the government introduces some evidence of changed country conditions, the burden then shifts back to the Petitioner to show that there's good reason not to accept the State Department's report. And here, Petitioner offered nothing on that score. So I would — I would say that although it's not the end-all and be-all, there's really nothing to rebut here in the changed country conditions. Where does it show that the immigration judge gave him a presumption of — The immigration judge doesn't specifically state, I now therefore transfer the presumption. But if you look at her opinion on page AR-126, she — so she doesn't — and nor is there any requirement that she then speak in such language. But she doesn't specifically — Well, there's a difference between if you find persecution, you then give a presumption. Right. And then you have to say the presumption is rebutted. I didn't see anything on AR-126 that suggested that she was doing that. Okay. So if you go to page AR-125, she says, Next, the Court will consider whether the Respondent has established that a pattern in practice of persecution exists for Baptists in Romania, thus laying a foundation for a successful asylum claim of well-founded fear of future persecution in the absence of past persecution. So I'm sorry. It's not the burden-shifting that I talked about, but rather the freestanding well-founded fear claim. But in any event, the analysis would be the same, which is that the government has offered the State Department report, and the Petitioner has offered absolutely nothing to rebut that. And I think the State Department report does talk about changed country conditions for Baptists. No, but what I'm saying to you is that the immigration judge rejected the idea of past persecution, and then went on to talk about well-founded fear. But if she had found past persecution, when she went on to that, she would have started with a presumption. And she didn't because she rejected it, rejected past persecution. Judge Reinhart, you're correct, and I'd like to amend what I said. What I intended to say was that the immigration judge separately analyzed a well-founded fear claim. So not that a presumption would apply, but on that score, I would say that the government introduced sufficient evidence of changed country conditions since the Romanian Revolution of 1989. And that report clearly establishes that conditions have improved for Baptists, and that Baptist churches are recognized throughout Romania. It makes a big difference because if the asylum claim was late, and therefore no finding of well-founded fear, nonetheless, shouldn't the IJ have analyzed withholding of deportation? Because you would start with the past persecution claim and see if the presumption had been overcome. And that was the purpose of my question. I'm not sure I still understand your question because the immigration judge then did analyze the withholding claim. Based upon no well-founded fear, therefore no withholding. And that based on no past persecution. And that was... That's the point. That's what we can't find. When there's no past persecution, then you don't give the applicant a presumption. And that's what happened in this case. Well, that's true, except... He was entitled to a presumption which had to be rebutted by country conditions. Well, I don't think... It's a different standard from just saying no past persecution and here are the country conditions. Well, I don't think that he was entitled to that presumption because the government's position is that he never established past persecution. That's right. And what I'm saying is if the past persecution issue comes out differently, then you can't just rely on the finding here. It would have to be sent back so that the I.J. could analyze the effect of country conditions after a presumption is applied. That is correct, Your Honor, although to do that, this Court would have to reverse several levels. Number one, this Court would have to second-guess the BIA and the I.J. and find that, in fact, past persecution, there was that sufficient nexus here, which for all the reasons I've detailed was lacking in the timeliness aspect. Of course, that doesn't pertain to the withholding claim, but just to the asylum claim. But I think that the lack of any kind of nexus here... Well, why doesn't it apply to the withholding claim? Because the withholding, the timeliness point, the extraordinary circumstances doesn't apply to the withholding, just to the asylum claim. No, no. When I say if the past persecution is established, if by some chance we concluded that there was past persecution, there was a sufficient nexus, or when you prosecute someone in a country for leaving the country and there's a political reason for it or a religious reason for it, that that then constitutes past persecution. If we were to conclude that, then we would have to send it back because you'd have to apply the country conditions in light of a presumption. I would have to agree with that, Your Honor. However, I think it would be quite a stretch of Guo, for example, to, on the facts of Guo, to apply this to this case, because here the Petitioner broke the law. And I'll grant you... There are cases where Petitioners broke the law in a very similar manner. In Cuba, for instance, where we said that when you flee Cuba and they prosecute you for leaving the country, that that's a political motive if you happen to be an anti-communist. The same principle, it would seem, would apply here if you're a Baptist and they don't like Baptists in the country, and then you prosecute them for leaving the country. I think, with all due respect, one of the reasons that the Petitioner was prosecuted here is because he bribed officials, and that really had nothing to do with it. Thank you. Thank you. Your Honors, I would like to return to the issue of the extraordinary circumstances. The Board of Immigration Appeals stated that we agree with the immigration judge's decision with respect to the extraordinary circumstances issue. It did not repair any error by the immigration judge. And if we read, if we go to the text of the Board of Immigration Appeals decision, it says, he did not establish that he qualified for an exception that would excuse his deletory filing based on his father's health problems. Now, based on the fact that they're relying on the immigration judge's decision, we have to look at the immigration judge's decision to see what the BIA meant by that. And the immigration judge did not recognize either the regulation or the fact that an applicant can qualify for an exception based on the serious medical problem of an immediate family member. And I would submit that the harmless error does not apply in this case. And if the court, I would welcome briefing that issue if the court believes there might be a harmless error analysis in that respect. And quickly, Your Honor, in Go, the argument was, the government's argument that this Court rejected was that the applicant broke the law. It's the same exact applicant argument that's being used here. And I would like to point the Court to a 1996 decision, Rodriguez-Ramon, with respect to leaving a communist country, being an expression of political opinion. And I — Was that cited in your brief? No, no, Your Honor. We didn't ever cite it. Were you submitted to the court and the opposing counsel that case? The clerk will give you some papers to submit the case and citation to the court and to the opposing counsel. Yes. Yes, Your Honor. And going back to the issue of the discernibility of the BIA's decision, the whole structure of the immigration judge's decision that he's not eligible for asylum and, therefore, he's not eligible for withholding of removal, the BIA cannot say we agree with — we're not sure we agree with the immigration judge that he's not eligible for asylum, but we agree that he's not eligible for withholding of removal because the analysis with respect to past persecution is the exact same. So they had to adopt that decision. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Parker v. Yuba County Water District.
judges: Schroeder, D.W. Nelson, Reinhardt